**Gary Lee RYMER and Deborah Ann Rymer, Plaintiffs-Appellants,**

v.

**DOUGLAS COUNTY, et al., Defendants-Appellees.**

No. 83–8773.

United States Court of Appeals, Eleventh Circuit.

July 2, 1985.

Robert D. Feagin, Gary A. Barnes, Seaton D. Purdom, Atlanta, Ga., for plaintiffs-appellants.

Arthur H. Glaser, George Randall Moody, Atlanta, Ga., for Watson & Daniel.

William C. Tinsley II, Douglasville, Ga., for Douglas County Comm. & J. Watson.

Joseph H. Fowler, Douglasville, Ga., for Cochran.

Before GODBOLD, Chief Judge, CLARK, Circuit Judge, and THOMAS [*], District Judge.

[*] Honorable Daniel H. Thomas, U.S. District Judge for the Southern District of Alabama, sitting by designation.

PER CURIAM:

Appellants' claim, brought pursuant to 42 U.S.C. § 1983, arises out of the appellees' issuance of a building permit, which allowed plaintiffs to acquire and build a residence on certain property in Douglas County, Georgia. Appellants maintain that the appellees either knew or should have known that the land was unsuitable for residential use because of a high water table that precluded the use of a septic tank waste disposal system. The district court dismissed plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6) holding that the plaintiffs could prove no set of facts in support of their claim which would entitle them to relief under 42 U.S.C. § 1983. We affirm.

## I. *The Underlying Controversy*

The appellants' complaint alleged that in 1980, builder/developer Louis J. Menchio obtained approval to build homes in a proposed new subdivision in Douglas County. Defendant Board of Health, however, refused to give approval to one lot in the subdivision, Lot No. 22, because the water table on the lot appeared to be so high as to make it doubtful whether a septic tank waste disposal system was feasible. The Board required Menchio to submit a "plot plan" for No. 22 which would depict proposed improvements designed to make it adequate to support a septic tank system. In furtherance of this requirement, defendant Cochran, the county surveyor, performed a percolation test. This test was approved by defendant Daniel, the senior sanitarian of the Douglas County Board of Health, and therefore a plot plan was prepared for Lot No. 22. The building permit for Lot No. 22 was subsequently issued. Appellants, Gary Lee and Deborah Ann Rymer, then entered into an agreement with Menchio to purchase and construct a home on Lot No. 22. They were never

informed of any potential problems in installing a septic tank system on the lot.

Sometime during construction, the subcontractor responsible for installing the septic tank system summoned defendant Daniel to the construction site because of his concern that such a system would not work on the property. Daniel drew a design for the septic tank system which the subcontractor followed. Construction was completed and the Rymers moved into their home in March of 1981. In February of 1982, they noticed what they believed to be sewage bubbling out of the ground near the house. Defendant Daniel confirmed it was sewage and recommended certain measures that could be taken to eliminate the problem, including installation of a sand filter system. However, state officials later told the Rymers that sand filter systems were not permitted for private residences. Meanwhile, defendant Daniel sent letters to the Rymers notifying them that the discharge of sewage onto their property constituted a health hazard and had to be stopped. Subsequent letters threatened legal action if the problem were not remedied. The Rymers then retained a private sanitary engineering firm. The engineering firm told the appellants the septic tank system had been properly installed but that the water table was too high to support such a system. It was their belief that a lowering of the water table in the back of the lot was possible and would perhaps help the situation.

In June of 1982, the Board of Health filed suit against the Rymers in the Superior Court of Douglas County, seeking to enjoin the discharge of sewage. Following a hearing, the court found that the discharge constituted a public nuisance and issued the injunction. Shortly thereafter, appellants spent approximately $10,000 for improvements to remedy the problem, but these efforts were unsuccessful. In December of 1982, appellees cited appellants for contempt of the superior court injunction, and four days later appellants filed this action alleging federal claims pursuant to 42 U.S.C. § 1983 [1] for deprivation of their property without due process or just compensation in violation of the Fifth and Fourteenth Amendments of the United States Constitution. More specifically, the appellants alleged that the defendants had deprived them of federally protected rights by: failing to conduct appropriate tests on the appellants' property before issuing the building permit; failing to take affirmative steps to correct the design of a septic tank system that the appellees knew or should have known could not function properly; and, failing to follow the applicable county regulations. Appellants further alleged that these actions were part of an established custom to award building permits improperly and were in furtherance of a conspiracy to develop unusable land as residential property in order that they might derive unjust profit in their respective positions as county officials.

## II. *The District Court's Order and Opinion*

The district court, after reviewing the facts and allegations, found that it had jurisdiction, "[a]ccordingly, the Court assumes jurisdiction of this case and will consider defendants' arguments as going to the merits of plaintiffs' complaint." The court then reviewed the applicable case law and concluded,

... the Rymers have failed to plead a constitutional tort that justifies a § 1983 action. Even if defendants knew or should have known that plaintiff's property was unsuitable for a septic tank system of waste disposal and yet proceeded to approve and affirmatively to assist in the construction of such a system, pursuant to an agreement and a

---

1. 42 U.S.C. § 1983 reads:

    Every person who, under color of any statute, ordinance regulation, custom, or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

public policy favoring development of even unsuitable land, the Court finds that such conduct is not 'sufficiently egregious as to be constitutionally tortious.' ... The Court concludes that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief under § 1983.

## III. *The Legal Issues in Context*

■ Although 42 U.S.C. § 1983 is a species of tort law, not every violation of state or local law by a governmental body or governmental actor constitutes an invasion of federally protected rights. Plaintiff in order to prevail must show a constitutional violation. *See Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir.), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). In this case, appellants, plaintiffs below, alleged three different constitutional violations: that the defendants' actions had resulted in a Fifth Amendment taking; that the defendants' actions had resulted in a deprivation of their rights to substantive due process;[2] and that the defendants' actions had infringed upon their right to procedural due process. We will address each of these claims in turn.

### A. The Fifth Amendment Taking Claim

■ Appellants maintain that the appellees' action in wrongfully issuing the building permit upon land which they knew or should have known was unsuitable for a septic tank system resulted in their inability to use the dwelling as a residence. We find no merit to this claim. The just compensation clause of the Fifth Amendment prohibits private property from being taken for public use without just compensation. That clause is made applicable to the states through the due process clause of the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358

(1980). The question of what constitutes a taking has, in many instances proven to be a problem of considerable difficulty. Obviously, when a government entity exercises its power of eminent domain to obtain title to the property through formal condemnation proceedings there has been a taking. *See, e.g., Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed.2d 27 (1954). A permanent physical occupation of the property through some state usage or authorization, absent a formal condemnation proceeding, may also be a taking. *See, e.g., Loretto v. Teleprompter Manhattan CATV. Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (installation of cable television equipment on private property pursuant to state authorization). Where the government condemns a leasehold interest for temporary use, the "taking" includes the value of fixtures and permanent improvements as well as the lessee's cost of moving. *United States v. General Motors Corp.*, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed.2d 311 (1945). Finally, police power regulations restricting the use of property may in some limited circumstances amount to a taking. *See, e.g., Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed.2d 322 (1922) (State regulation prohibiting an owner from mining coal it owned beneath the house of an owner who bought only an interest in the surface).

■ In this case, in order for there to have been a taking, plaintiffs must allege they have been denied any viable economic use of their property. *See Hernandez v. City of Lafayette*, 643 F.2d 1188, 1200 (5th Cir.1981); *York v. City of Cedartown*, 648 F.2d 231, 232 n. 2 (5th Cir.1981). A reduction in value alone arising from regulation of landfills does not constitute a taking. *Dirt, Inc. v. Mobile County Commission*, 739 F.2d 1562, 1566 (11th Cir.1984); *see also Pennsylvania Central Transporta-*

---

**2.** The plaintiff's complaint does not explicitly allege a substantive due process violation but rather appears to be a procedural due process claim. However, it is unclear. The district court did not distinguish between substantive and procedural due process in its order. At oral argument, counsel for the Rymers maintained that their due process claim was substantive in nature. We will treat the complaint as alleging both a substantive and a procedural due process violation.

*tion Co. v. New York,* 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631, 653 (1978). Additionally, an otherwise valid exercise of the police power is not a taking simply because the regulation deprives the owner of the most beneficial use of his or her property. *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 592, 82 S.Ct. 987, 989, 8 L.Ed.2d 130 (1962); *see also Nasser v. City of Homewood,* 671 F.2d 432, 438 (11th Cir. 1982) (neither deprivation of most beneficial use of land nor severe decrease in property value is a taking). There is no set formula for making the determination of whether a regulation is so onerous as to be confiscatory. *Goldblatt, supra,* 369 U.S. at 594, 82 S.Ct. at 990. The taking clause, however, does stand to protect a citizen against the arbitrary use of government power. *Webb's Fabulous Pharmacies, supra,* 449 U.S. at 164, 101 S.Ct. at 452.[3]

In this case we conclude that there was no arbitrary or confiscatory use of government power and thus no taking. The Rymers have alleged that the use of their property as a private residence has been substantially impaired as well as the property's market value. The Rymers do not argue, nor could they, that the enforcement of the state of Georgia's Douglas County's nuisance laws, as it applied to the leaking of raw sewage on their property was unreasonable. Clearly, the County had a valid interest in preventing this from continuing. The pleadings also reflect that the County gave the plaintiffs/appellants several opportunities to correct the leakage. When the problem could not be corrected after several attempts, only then did the County take action. We find this to be a valid exercise of the police power.

Additionally, and most importantly, in this case there was no actual taking. The County did not attempt to acquire through formal proceedings the Rymers' property.

Nor has the County or some third person with the County's acquiescence acquired use of or invaded their property. The County is not attempting to acquire beneficial use of the property at all. There is no public use here. The Rymers own what they bought and the defendants have taken no action to diminish that property right.

At most, the plaintiffs have alleged that the County issued a building permit for land they either knew or should have known would not support a septic system. This may give rise to an action under state law. However unfortunate for the Rymers the result of their acquisition of the house on Lot # 22 turned out to be, there was no taking. Therefore, based upon our review of the applicable law, even assuming that the allegations made by the appellants are true, we find that the appellants have failed to allege a Fifth Amendment taking claim.

**B. Substantive Due Process**

Appellants also allege that there has been a deprivation of their substantive due process rights under the Fourteenth Amendment. Appellants' argument is essentially that the improper issuance of the building permit under circumstances where the appellee either knew or should have known that the land in question could not accommodate the septic tank system was in violation of their substantive due process rights in the property. The current test in this circuit as to whether there has been a violation of substantive due process in the context of § 1983 is twofold. First, it must be determined whether there has been a deprivation of a federal constitutionally protected interest, and secondly, whether the deprivation, if any, is the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. *Wil-*

---

**3.** The Court defined the protection as:
Indeed, '[t]he Fifth Amendment's guarantee ... was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' *Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).

*liams v. Kelley, supra,* 624 F.2d at 697.[4] The district court in this case found:

> Even if the defendants knew or should have known that plaintiffs' property was unsuitable for a septic tank system of waste disposal and yet proceeded to approve and affirmatively to assist in the construction of such a system, pursuant to an agreement and a public policy favoring development of even unsuitable land, the Court finds that such conduct is not 'sufficiently egregious to be constitutionally tortious.'

We note at the outset of this analysis, the similarity in this case between the above test and the inquiry we made pursuant to the taking clause of the Fifth Amendment. As was stated earlier, the taking clause is a protection against the arbitrary use of government power. *Webb's Fabulous Pharmacies, supra,* 449 U.S. at 164, 101 S.Ct. at 452. The due process test enunciated in *Williams* adds little or nothing that the taking clause does not encompass.[5]

, Our examination of the precedent in this circuit regarding substantive due process claims and an application of those principles to the facts in this case convinces us that the district court was correct in its conclusion that appellant failed to state a cognizable § 1983 claim. In *York v. City*

*of Cedartown, supra,* a panel of the former Fifth Circuit found that the negligent design of a street and drainage system by a municipality that adversely affected the value of the plaintiffs' property was not an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. 648 F.2d at 233.

In *Hull v. City of Duncanville,* 678 F.2d 582 (5th Cir.1982), plaintiff brought an action alleging that a municipality's either intentional or negligent nonenforcement of the municipal ordinance that resulted in the injury of a child at a train crossing was not "sufficiently egregious as to be constitutionally tortious." 678 F.2d at 584. Therefore, the panel affirmed the dismissal of the complaint.[6]

Appellants rely heavily upon the Fifth Circuit case of *Suthoff v. Yazoo County Industrial Development Corp.,* 637 F.2d 337 (5th Cir.1981). In *Suthoff,* the plaintiffs alleged a conspiracy among the defendants to misuse a municipality's expropriation powers in order to coerce landowners to sell their property to the county at a price below actual value. The district court dismissed the complaint on the basis that it lacked subject matter jurisdiction. The court of appeals reversed the decision of the district court and remanded the case. However, the court did so on very narrow

---

*Id.* at 163, 101 S.Ct. at 452.

**4.** The key inquiry in a case is the second prong of the test. Substantive due process protects a general right of an individual to be free from the abuse of governmental power. *See Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Turpin v. Mailet,* 579 F.2d 152, 169 (2d Cir.) (concurring opinion), *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978).

**5.** Furthermore, substantive due process is a concept used by the judiciary to protect those rights fundamental to our concept of ordered liberty but not explicitly mentioned in the Bill of Rights. The taking clause is a specific constitutional guarantee of the Bill of Rights incorporated to the states through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, supra.* Examples of judicially created substantive constitutional rights are: the right to travel, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); right to procreate, *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86

L.Ed. 1655 (1942); right to terminate pregnancy, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). We express no opinion whether there can ever be a substantive due process violation in cases where a specific constitutional guarantee is involved. Our analysis is limited to the facts of this case.

**6.** As the district court noted, plaintiff's allegations of a conspiracy may appear to distinguish this case from *Hull* and *York.* In *Hull,* however, there was an allegation that city officials and employees met secretly and decided not to enforce the city ordinance. 678 F.2d at 584. Additionally, plaintiff's allegations of a conspiracy is inconsistent with their often repeated allegation that defendants "knew or *should have known"* that the lot was unsuitable for the septic tank system. (emphasis added). This contention undermines their conspiracy assertion, which would, of course, require actual knowledge that the property was unsuitable.

grounds, finding that the plaintiffs' federal claim was not so frivolous that the district court had no *jurisdiction*. 637 F.2d at 339 (emphasis added). The court went on to say that the district court could still dismiss the case on the merits if it found that action appropriate.[7] *Id*. In this case, the district court found that it had jurisdiction, but then dismissed the complaint for failure to state a cause of action upon which relief could be granted. Therefore, this case is distinguishable from *Suthoff*.

■ In the final analysis this court must determine whether accepting the allegations in the plaintiffs' complaint as true, is the action by the county and its officials such an abuse of governmental power sufficient to raise the tort alleged to the stature of a constitutional violation?[8] It is our determination that the appellees' actions in this case do not rise to such a level of abuse.

### C. Procedural Due Process

■ Appellants also maintain that the action by the defendants violated their constitutional right to procedural due process.[9] It is our determination that any claim made by the plaintiff that the appellees' actions either intentionally or negligently deprived them of their property without due process is foreclosed by the recent Supreme Court case of *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In *Hudson*, the Supreme Court extended its holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to cover intentional deprivations of property as well as negligent deprivations. Under *Hudson*, a plaintiff cannot bring a property claim against a governmental body if the governmental body being sued provides a meaningful post-deprivation remedy. 104 S.Ct. at 3203. The Court determined that a constitutional tort did not exist unless the state refused to provide a meaningful post-deprivation remedy.[10] It is our determination that the law of Georgia provides an adequate means to address the claims alleged by the appellants in this case. A county and its officials can be sued under Georgia law for the type of injury alleged by the appellants. *See Duffield v. Dekalb County*, 242 Ga. 432, 249 S.E.2d 235 (1978). Therefore, because we find that a suitable and meaningful post-deprivation state remedy exists, we hold that the Supreme Court's decision in *Hudson v. Palmer* forecloses the appellants on this issue.

### IV. *Conclusion*

Because we are in agreement with the district court that the plaintiffs can prove no set of facts that would entitle them to relief pursuant to 42 U.S.C. § 1983, the decision of the district court is

AFFIRMED.

---

**7.** On remand, the district court dismissed the case on the basis that the action was barred by the applicable statute of limitations. That decision was affirmed. *Suthoff v. Yazoo County Industrial Development Corporation*, 722 F.2d 133 (5th Cir.1983).

**8.** There is little doubt, and appellees do not seriously contest, that the plaintiffs had a protected property interest in the land in question. We do not explore this matter in any depth, however, because we find that the alleged county's actions here do not satisfy the "abuse" prong of the *Williams* test.

**9.** At oral argument, appellants seemed to maintain that the due process violation alleged was more in the nature of a substantive due process violation as opposed to a procedural due process violation. However, because it is unclear from the briefs and the district court opinion, as well as the complaint itself, as to the exact nature of their due process allegations, we will treat the appellants' arguments as raising both a substantive and a procedural due process violation.

**10.** The Supreme Court has not made clear, and it has not yet been decided by this circuit, whether the court's holding in *Parratt* and *Hudson* extends to allegations of substantive as well as procedural due process violations. We do not reach that issue in this case because we find the appellants have failed to allege either a substantive or procedural due process violation. For an analysis of the distinction between procedural and substantive due process violations in the context of the Supreme Court's decision in *Parratt, see* Wells and Eaton, *Substantive Due Process and the Scope of Constitutional Torts*, 18 Ga.L.Rev. 201 (1984).