**HABERSHAM AT NORTHRIDGE**

v.

**FULTON COUNTY, GEORGIA, et al.**

**No. C84–2005A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 26, 1985.

George P. Dillard, Dillard, Greer, Westmoreland & Wilson, Decatur, Ga., for plaintiff.

Frank N. Biggins, Arrington, Patterson & Thomas, P.C., Atlanta, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiff Habersham at Northridge is a joint venture which owns a 13.607 acre tract of land (the "subject property") located at the northeast quadrant of Northridge Road and Georgia 400, a limited access highway. Defendants Michael Lomax, Tom Lowe, Milton Farris, Reginald Eaves, Chuck Williams, Lee Roach and Bruce Bannister are members of the Fulton County Board of Commissioners. Defendant Robert Gerber is Director of the Fulton County Department of Planning and Community Development, defendant Wallace Linsey is the Fulton County Zoning Administrator, and defendant E.R. Garner is Director of the Fulton County Department of Permits and Inspections.

This action arises out of the Fulton County Board of Commissioners' refusal to rezone the subject property for office use as sought by the plaintiff. Plaintiff initially requested that the court issue a temporary restraining order enjoining further application of the Fulton County zoning ordinance to the plaintiff's property. In an order dated October 5, 1984, the court denied the plaintiff's motion for a temporary restraining order and ordered the parties to appear for a hearing on the plaintiff's motion for a preliminary injunction. The court then granted the plaintiff's motion to consolidate the trial on the merits with the application for a preliminary injunction. The action was tried before this court without a jury on April 8–9, 1985, and the parties have now submitted proposed findings of fact and conclusions of law.

## I. Jurisdiction

Plaintiff has filed this action pursuant to 42 U.S.C. § 1983. As has often been noted, section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *City of Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 2432–33, 85 L.Ed.2d 791 (1985). In this case, the plaintiff alleges that the actions of the defendants violated the Fifth Amendment, which prohibits private property from being taken for public use without just compensation. The just compensation clause of the Fifth Amendment is made applicable to the states through the due process clause of the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). In addition, the plaintiff contends that the defendants' actions deprived it of due process and equal protection of the law, in violation of the Fourteenth Amendment. Plaintiff also asks the court to exercise pendent jurisdiction over its state law claim.

As a general proposition, this court believes that zoning disputes are matters which are more properly litigated in state court. Nonetheless, because the plaintiff's just compensation claim is clearly not insubstantial and frivolous, the court finds that the plaintiff's claim meets the jurisdictional requirements of 28 U.S.C. § 1343(3). *See Fountain v. Metropolitan Atlanta Rapid Transit Authority*, 678 F.2d 1038 (11th Cir.1982).

Although the court will assume jurisdiction over the plaintiff's federal claims, the court will, on its own motion, dismiss the plaintiff's state law claim. A district court's decision on whether to exercise pendent jurisdiction over a state law claim involves inquiry into a two-pronged test. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). First, the court must determine whether it has the power to hear the state claim and, second, the court must decide whether the exercise of that power would be a proper use of the court's discretion. *Phillips v. Smalley Maintenance Services, Inc.*, 711

F.2d 1524, 1531 n. 4 (1983). Because the plaintiff's federal and state claims derive from a common nucleus of operative facts, *United Mine Workers*, 383 U.S. at 725, 86 S.Ct. at 1138, this court has the power to hear the state law issues. This court believes, however, that a proper exercise of judicial discretion requires dismissal of the state law claim.

■ The court notes that the federal and state law questions presented to the court are similar, although not identical. Plaintiff's federal constitutional claim requires the court to make the limited determination of whether the application of the zoning ordinance to the plaintiff's property substantially advances legitimate state interests or denies the plaintiff economically viable use of its property. *Agins v. City of Tiburon*, 447 U.S. 255, 261, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). The Georgia Supreme Court has established a balancing test under which a regulation is considered confiscatory if it results in relatively little gain or benefit to the public while inflicting serious injury or loss on the owner. *Barrett v. Hamby*, 235 Ga. 262, 219 S.E.2d 399 (1975). The court in *Barrett* specifically held that for an unlawful confiscation to occur, "it is not necessary that the property be totally useless for the purposes classified." *Id.* at 266, 219 S.E.2d at 402. It will suffice that the damage to the owner is significant and is not justified by the benefit to the public. *Id. Cf. Rymer v. Douglas County*, 764 F.2d 796 (11th Cir.1985) (Plaintiffs must allege the denial of any viable economic use of their property.).

In *Guhl v. Holcomb Bridge Road Corp.*, 238 Ga. 322, 232 S.E.2d 830 (1977), the Georgia Supreme Court noted certain specific factors which are relevant to the balancing test put forth in *Barrett*:

(1) existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of the plaintiffs promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public, as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the property.

*Id.* at 323–24, 232 S.E.2d at 832. The court also held that the appropriate remedy if the regulation is declared void is for the trial court to order the local governing authority to rezone the property in a constitutional manner, with the trial court reserving jurisdiction to declare the property free from any restrictions if constitutional rezoning is not accomplished within a reasonable time. *Id.*

The validity of a zoning ordinance under state law is a matter primarily of local concern and one which is particularly well suited for adjudication in state court. The Georgia courts have established guidelines for dealing with such issues and have extensive experience in zoning matters. As noted above, if an ordinance is found to be void, Georgia courts have broad authority to retain jurisdiction over a particular action pending rezoning of the property by the local governing authority. In sum, the court believes that the better course of action is for this court to rule on the merits of the plaintiff's federal claims but to decline to exercise pendent jurisdiction over the plaintiff's state law claim. The court notes that under Georgia law, a claim for damage to realty based upon a taking of private property without just compensation must be brought within four years after the right of action accrues. Off'l Code Ga.Ann. § 9–3–30; *Lawrence v. City of LaGrange*, 63 Ga.App. 587, 11 S.E.2d 696 (1940). Because the plaintiff's application for rezoning was not denied until September 5, 1984, an action in state court would not be barred by the statute of limitations.

## II. Findings of Fact

The property at issue in this action consists of a three acre tract of land fronting on Northridge Road and Huntingdon Trail

and an adjoining 10.6 acre tract of land. To the west of the property is Georgia 400, a four-lane limited access highway which will be expanded to eight-lanes. The contiguous property north of the subject property is zoned for multi-family residential use. The property east and south of the subject property is zoned for single-family residential use. East of the property, where Northridge Road ends, is recreational area and the Chattahoochee River. The property southwest of the subject property, across Northridge Road and Roberts Drive, is zoned for multi-family residential use. There is significant office and commercial development on the opposite side of Georgia 400 west of the subject property. There is no evidence in the record that the subject property has ever been developed.

Plaintiff purchased the two tracts of land in question in August 1984. Under the terms of the purchase arrangement, the plaintiff paid approximately $237,000.00 at the closing. If the property is rezoned as the plaintiff seeks, the plaintiff must pay an additional two million dollars, which is secured by two notes, bringing the total purchase price to approximately $2.2 million. If the property is not rezoned as sought, the plaintiff is not obligated to pay off the notes. Rather, the plaintiff has three alternatives: (1) indicate to the sellers that it does not want the property, thereby incurring a loss consisting of the down payment and investments made in the property since the closing; (2) renegotiate the purchase arrangement; or (3) create a new joint venture.

At the time the plaintiff purchased the subject property, development on the property was limited to the uses allowed under an AG–1 (Agricultural) zoning classification. This classification allows for agricultural use, other public uses, or single family residential dwellings on lots of one acre or more. After purchasing the property, the plaintiff applied to have the property rezoned to O–I (Office-Institutional) Conditional. Plaintiff also sought a special use permit to exceed the allowable height limitation. On September 5, 1984, the Fulton County Board of Commissioners denied the plaintiff's rezoning application. Plaintiff then initiated the instant action.

The denial of the plaintiff's rezoning application was not the first time the Board of Commissioners refused to rezone the subject property. On March 7, 1984, six months before the plaintiff purchased the property, the Board denied a similar request to rezone the property O–I. In addition, in November 1982, the Board denied a request to rezone the property for TR (Townhouse—Residential) use.

Plaintiff seeks to have the subject property rezoned in order to build a six-story office building. In denying the plaintiff's application, the Board of Commissioners adopted the reasoning of the Fulton County planning staff. Specifically, the planning staff stated that the plaintiff's proposal is "not compatible with the living patterns of the adjacent neighborhood and would produce severe negative impacts upon that neighborhood." See Plaintiff's Exhibits 7 and 8. The planning staff noted that the office development proposed by the plaintiff would be appropriate for the high intensity activity node west of Georgia 400 where it would not intrude on stable single-family neighborhoods and transitional uses could be encouraged. The staff pointed out that the proposal would not provide the opportunity for transitional land uses or adequate buffers. Accordingly, the staff concluded that the development would "begin the process of destabilization of the Northridge neighborhoods which would lead to the redevelopment of their 200+ acres as well as 45 acres of vacant properties along Roberts Drive to the south." Id.

The planning staff also indicated that the plaintiff's proposal would create certain technical difficulties. The staff noted that the proposed development would require the construction of a multi-level parking deck which would be exposed to some of the adjacent homes. The staff also stated that sewerage is not presently available to the site and that accordingly development is premature. The staff concluded that

"[u]pon the availability of sewerage, development compatible in both character and use with low density single-family uses should then proceed." *Id.* The staff suggested that the most appropriate use of the property would be single-family dwellings of less than one unit per acre. The staff indicated, however, that it could support single-family development on lots smaller than one acre if an acceptable level of compatibility with the existing neighborhood was maintained and if sewerage was available. Finally, the staff stated that if the plaintiff's petition was approved by the Board against the staff's recommendation, then the Board should at least require the establishment of significant buffers and should reduce the density of the proposed development "so as not to encourage additional high-density nonresidential development on other properties nearby." *Id.* In sum, however, the staff recommended denial of the petition because "essential land use compatibility between office and low density residential cannot be achieved due to the property's shape and orientation to the neighborhood." *Id.*

At the hearing before this court, the plaintiff presented expert witnesses who testified regarding the possibility of developing the subject property under the current zoning and as proposed by the plaintiff. Plaintiff first takes issue with the planning staff's concerns over the availability of sewerage for the proposed development. Plaintiff notes that Fulton County does not run sewer lines at county expense but instead requires that the developer pay for such lines. Plaintiff also points out that the county permits the use of county rights-of-way and will exercise its power of eminent domain, at the developer's expense, in order to construct sewer lines.

Plaintiff's expert witness, Peter Rhodes, discussed four alternatives for providing sewerage to the plaintiff's proposed development. These proposals would involve the use of lift stations or force mains which would be maintained by the developer. These methods of providing sewerage are used in other developments in Fulton County. Rhodes conceded, however, that the county concerns over the use of force mains or lift stations for this particular development are legitimate.

Plaintiff also presented evidence that the proposed development would not adversely affect the traffic situation in that area. Plaintiff's expert witness, Michael Sexton, testified that if certain improvements were made, the traffic would remain at its present level.

Plaintiff next presented evidence relating to the development of the property under either the current zoning or the proposed rezoning in terms of environmental considerations. Clifford Bragdon, a professor of city planning at the Georgia Institute of Technology, testified that the subject property is not suitable for residential development because the noise level on the property exceeds the recommended levels for residential compatibility. Bragdon stated that the predominant source of noise on this property is transportation. Bragdon also testified that the property is suitable for office use because offices can be better insulated than houses and because the acceptable noise levels for offices are not as strict as those for residences.

Bragdon next testified that the subject property is not suited for residential development because the spillover of light exceeds what one would want for residential homes. Bragdon indicated that if the proposed development was properly buffered to prevent spillover light, it would be compatible with the adjacent residential use. Finally, Bragdon testified that if Georgia 400 is expanded as planned, residential development would not be recommended because of decreased air quality. Bragdon concluded that the subject property is not compatible with residential use but is compatible with office use.

Plaintiff also presented evidence regarding the reasonableness of the current and the proposed zoning classifications. Thomas Roberts, a consultant on planning and zoning, testified that in his expert opinion, the current classification of the property as AG–1 is inappropriate and unreasonable.

Roberts based his opinion on several factors, including the location of the property at an activity center, as designated by the Atlanta Regional Commission; the fact that the shape, topography and size of the property make it inappropriate for single-family housing; the development which has taken place at other Georgia 400 interchanges; and the difference in value between the property as zoned and with the proposed rezoning. Roberts also testified that the proposed development could serve as a buffer between Georgia 400 and the adjacent neighborhood.

Finally, the plaintiff presented evidence relating to the economic feasibility of developing the subject property under the current and the proposed zoning. William Evans, Jr., a real-estate developer, testified that the subject property is not suitable for single-family residential development under the current zoning. Evans concluded that the lots would not be marketable at this location for what it would cost to develop these particular lots.

Brian McColgan, a real estate appraiser, testified that the subject property under the current zoning has a nominal value of $50,000. McColgan reached this conclusion primarily because of the property's location along Georgia 400 and the limited number of lots which could be developed. McColgan stated that if the property was developed under the current zoning (thirteen tracts for single-family dwellings on lots of one acre or more), the developer would sustain a net loss of $30,000. Because McColgan concluded that the property has a negative value under this zoning, he assigned a nominal value of $50,000 to the property.

McColgan also appraised the value of the property if rezoned for office use. McColgan concluded that based on a density of 25,000 square feet per acre and an assigned value of $20 per usable square foot, the property is worth $6,800,000. Thus, McColgan stated that the denial of the requested rezoning resulted in a diminution in value of $6,750,000. McColgan concluded that the plaintiff had incurred damages based on his appraisals of $535,000 as of the date of the hearing or $2,497 per day. McColgan also stated that he believed the proposed development would provide a buffer for the adjacent neighborhood and would not adversely affect the value of the neighbors' property.

III. Conclusions of Law

Initially, the court rejects the plaintiff's argument that the subject property is free of any zoning restrictions. This argument is based on the fact that the official Fulton County Zoning Map is kept in the office of the Fulton County Zoning Administrator rather than in the office of the Clerk of the Board of Commissioners and the fact that this map has been altered to indicate zoning changes which have occurred since 1955. The authority cited by the plaintiff does not support the contention that the county zoning map is void because it is kept in the Zoning Administrator's office. Accordingly, the court will address whether the Board's refusal to rezone the subject property from AG-1 to O-I, as sought by the plaintiff, violated the plaintiff's constitutional rights.

A. Fifth Amendment Claim

The just compensation clause of the Fifth Amendment prohibits private property from being taken for public use without just compensation. The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, or denies an owner economically viable use of his land. *Agins v. City of Tiburon*, 447 U.S. 255, 261, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

1. Legitimate State Interests

Federal judicial review of the actions of a county zoning commission under this prong of the takings analysis is exceedingly narrow. This court is not empowered to substitute its own determination of what would constitute the best possible use of particular property for the decision of the local zoning board. *Couf v. DeBlaker*, 652

F.2d 585, 588 (5th Cir.), *cert. denied*, 455 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982). As stated in *Stansberry v. Holmes*, 613 F.2d 1285 (5th Cir.), *cert. denied*, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980):

> Zoning is the local community's most powerful weapon against a wave of commercialism that threatens to permeate not only the major thoroughfares but the quiet residential neighborhoods with their parks, trees, and children at play. Without the power to zone, every person would be at the mercy of the entrepreneur who chose to develop on the next corner. Zoning provides one of the firmest and most basic of the rights of local control.

*Id.* at 1288. Thus, this court must simply inquire whether the action of the Board of Commissioners in refusing to rezone the subject property as requested was arbitrary and capricious, having no substantial relation to the general welfare. *South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir.1974), *cert. denied*, 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974). Upon a factual showing of arbitrariness, there must be some basis in fact and law to justify the zoning action as consistent with reasonableness. *Id.*

This court has carefully reviewed the evidence submitted and concludes that the Board's refusal to rezone the subject property was not arbitrary or capricious. In *Agins*, the Supreme Court held that a municipality has a legitimate interest in "assuring careful and orderly development of residential property with provision for open-space areas." *Agins*, 447 U.S. at 263, 100 S.Ct. at 2142. This court believes that the Board's refusal to allow the proposed high-density development is rationally related to the county's interest in promoting stable residential neighborhoods. The Board could reasonably conclude, based on the report and the opinion of the county planning staff, that the proposed development could have a negative impact on the adjacent neighborhoods and could lead to the redevelopment of the surrounding area. The Board could also conclude that single-family residential development is the most appropriate use of the subject property based on compatibility with the neighboring property and the inability to provide for transitional land uses. The court therefore finds that the classification of the subject property under an AG–1 designation is rationally related to legitimate state concerns. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 69, 101 S.Ct. 2176, 2182, 68 L.Ed.2d 671 (1981).

Plaintiff has presented this court with evidence which disputes the defendants' contention that the proposed development could have a negative impact on the adjacent neighborhoods. For example, Peter Rhodes testified that adequate sewerage could be provided to the office building at the plaintiff's expense and Michael Sexton testified that the development would not adversely affect the traffic situation. In addition, Clifford Bragdon and Thomas Roberts testified that the development could serve as a buffer between the residential neighborhood and Georgia 400. Brian McColgan stated that the proposed development would not adversely affect the property values of the adjoining residences.

The evidence presented by the plaintiff demonstrates that reasonable people could draw different conclusions about the possible effects the proposed development could have on the surrounding area. In such a situation, this court will not substitute its own judgment for that of the Board of Commissioners. Because the Board's decision to deny the plaintiff's rezoning application is substantially related to legitimate public concerns, the Board's actions were not arbitrary and capricious and must be upheld by this court.

Plaintiff also notes that petitions opposing the plaintiff's rezoning application, signed by neighboring property owners, were submitted to the Board of Commissioners. Plaintiff argues that these petitions are further evidence of the arbitrary and capricious nature of the Board's decision. The court does not agree. The Board's determination that the plaintiff's

application should be denied was not a judicial decision but, rather, was legislative in nature. *Couf,* 652 F.2d at 590. Accordingly, there is no procedural bar to the Board's consideration of such petitions. In addition, this court has already concluded that the Board's decision advanced legitimate state concerns, and thus, there is no evidence that the consideration of these petitions resulted in arbitrary or capricious action.

### 2. Economically Viable Use of the Property

■ The purpose of the just compensation clause is to prevent the government from forcing some people to bear public burdens which in fairness and justice should be borne by the public as a whole. *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 125, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). Thus, a zoning ordinance whose purpose and means are reasonable may nonetheless be a taking if it is unduly onerous so as to be confiscatory. *Maher v. City of New Orleans,* 516 F.2d 1051, 1065 (5th Cir.1975), *cert. denied,* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976).

The question whether the application of a zoning ordinance to particular property is so onerous as to amount to a taking has proven to be a problem of considerable difficulty and no set formulas have been developed to resolve this issue. *See Penn Central,* 438 U.S. at 124–25, 98 S.Ct. at 2659; *Rymer v. Douglas County,* 764 F.2d 796 (11th Cir.1985). The Supreme Court, however, has identified certain factors which are relevant in making this determination. A court must consider "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations...." *Penn Central,* 438 U.S. at 125, 98 S.Ct. at 2659. Another consideration is the character of the governmental action. *Id.*

■ In order for an otherwise valid exercise of a state's zoning power to constitute a taking because of the regulation's adverse economic impact on particular property, a plaintiff must prove that it has been denied "any viable economic use of [its] property." *Rymer,* 764 F.2d at 800, *citing Hernandez v. City of Lafayette,* 643 F.2d 1188, 1200 (5th Cir.1981); *York v. City of Cedartown,* 648 F.2d 231, 232 n. 2 (5th Cir.1981). Neither deprivation of the most beneficial use of land nor a severe decrease in the value of the property will alone establish an unlawful taking. *Nasser v. City of Homewood,* 671 F.2d 432, 438 (11th Cir.1982).

■ This court has considerable doubt that the subject property is worth no more than $50,000 as zoned. The court questions, for example, whether development of the three tracts fronting on Huntingdon Trail for single-family residential use, without development of the remaining ten acres, would alone result in property worth more than this amount. However, in view of the fact that the defendants have not presented any evidence rebutting this appraisal, the court will assume for the purpose of this discussion that the property as a whole cannot be developed profitably under its current zoning. Nonetheless, because this court finds that the plaintiff had no legitimate expectation that the property would be rezoned for office development as sought, the court concludes that no taking has occurred.

As the court views the plaintiff's actions in this case, the purchase of the subject property and the subsequent application for rezoning do not evidence a reasonable investment-backed expectation but, rather, a business gamble. Plaintiff put up $237,000 for property which the Fulton County Board of Commissioners had twice refused to rezone and which, by its own expert's account, was worth no more than $50,000 at the time of the purchase. If the property was rezoned as sought, the gamble would pay off because the plaintiff, after putting up an additional $2,000,000, would own property worth $6,800,000. If, however, the property was not rezoned, the plaintiff could simply walk away from the

deal, losing little more than what it cost to place its bet.[1] This court does not believe that "justice and fairness" require that the public be made to bear the cost of what turned out to be a losing gamble.

## B. Due Process and Equal Protection

 The plaintiff's claim under either the due process or the equal protection clause of the Fourteenth Amendment is coextensive with its claim under the takings clause, which protects against the arbitrary use of government power. *See Rymer*, 764 F.2d at 802, *Couf v. DeBlaker*, 652 F.2d 585, 588 n. 7 (5th Cir.1981). The test in this circuit as to whether there has been a violation of substantive due process involves an inquiry into whether there has been a deprivation of a federal constitutionally protected interest and whether the deprivation, if any, is the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. *Rymer*, at 802; *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir.), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981). In *Rymer*, the Eleventh Circuit stated that the due process test "adds little or nothing that the taking clause does not encompass." *Rymer*, at 802. Because this court has concluded that the actions of the defendants were rationally related to legitimate state concerns and were not arbitrary and capricious, the plaintiff's Fourteenth Amendment claim must be denied. The court also finds that the actions of the defendants do not evidence an abuse of governmental power.[2]

Accordingly, the plaintiff's state law claim is DISMISSED. Plaintiff's prayer for monetary, declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 is DENIED. The clerk is DIRECTED to enter final judgment in favor of the defendants.

1. Plaintiff asserts that it would lose $385,000 if the property is restricted to AG–1 zoning.

2. Plaintiff's post-trial pleadings do not raise a claim based on a denial of procedural due process. In any event, since the state of Georgia provides an adequate means to address the is-

sues raised in this case, *see Barrett v. Hamby*, 235 Ga. 262, 219 S.E.2d 399 (1975), a procedural due process claim would be foreclosed by the Supreme Court opinion in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *See Rymer*, 764 F.2d at 802–03.