*Martinez v. Rodriguez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968).

The entire record in the cases, along with copies of the briefs of the parties, are transmitted herewith.

CERTIFIED.

**Ann P. FIELDS, et al.,
Plaintiffs-Appellees,**

v.

**ROCKDALE COUNTY GEORGIA, et al., Defendants-Appellants.**

No. 85–8286.

United States Court of Appeals,
Eleventh Circuit.

April 8, 1986.

John A. Nix, Conyers, Ga., Albert M. Pearson, Univ. of Ga., School of Law, Athens, Ga., for defendants-appellants.

Kathleen Kessler, Abraham A. Sharony, Atlanta, Ga., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, ATKINS *, Senior District Judge.

GODBOLD, Chief Judge:

Gerald and Ann Fields, under the name "Life for God's Stray Animals, Inc." began a not-for-profit "no-kill" animal shelter some time before 1980, operated on a lot on Presidential Circle in Lakeview Estates, a mobile home park in Rockdale County, Georgia. The number of animals maintained at this site was as great as 300. The county filed suit in the Superior Court of Rockdale County to enjoin the Fields from maintaining the shelter in the trailer park. A consent order was entered in August 1980 allowing the Fields to move the shelter to a seven-acre site on Farmer Road, elsewhere in the county. This decree required the Fields to seek appropriate building permits and zoning variances and to build a fence along the Farmer Road frontage to conceal the shelter.

---

* Honorable C. Clyde Atkins, Senior District Judge for the Southern District of Florida, sitting by designation.

The shelter was moved to the Farmer Road site. The Fields applied to the County Board of Zoning Appeals for a variance from a 200-foot setback ordinance but were denied. They did not appeal the denial to the County Board of Commissioners. In 1982 the county filed suit in superior court to enjoin the Fields from expanding the Farmer Road shelter. An order was entered in July 1982 prohibiting further expansion.

Early in 1983 a neighborhood association sued the county and the Fields in superior court to abate an alleged nuisance and to require enforcement of the setback ordinance. The county cross-claimed. Following trials, orders were entered requiring the county to enforce the setback and enjoining the Fields from operating a nuisance. The order addressed to the Fields directed them to propose a compliance plan. Presumably no such plan was submitted. The orders were stayed pending the Fields' appeal. The Supreme Court of Georgia affirmed the judgments. *Life for God's Stray Animals, Inc. v. New North Rockdale County Homeowners Ass'n*, 253 Ga. 551, 322 S.E.2d 239 (1984).

In September 1984, shortly before the Georgia Supreme Court issued its decision, the Fields contracted to buy a 220-acre parcel of land, also in Rockdale County, on Miller Bottom Road, adjoining the county dump. They hoped to transfer the population of the Farmer Road site, which then totalled approximately 1,000 animals, to a new facility to be built at Miller Bottom. News of the purchase was published, and within ten days the county passed an ordinance [1] that would limit the population of animals in any kennel to 150 dogs and 50 cats. Commonly owned or managed kennels located within a one nautical mile radius of one another were treated under the ordinance as a single kennel. The Fields consummated the purchase of the Miller Bottom property in November 1984.

Upon remand from the Georgia Supreme Court, the superior court in January 1985 found the county in non-willful contempt of its order requiring the county to enforce the setback at the Farmer Road site. The county moved for a permanent injunction against the Fields, and in February 1985 the superior court ordered the Fields to remove by February 25 all structures on the Farmer Road property not within the 200-foot setback line. The Fields appealed

1. Section 9–3009—MAXIMUM SIZE OF KENNELS.

(a) A kennel is hereby defined to include the keeping of dogs and/or cats for commercial, non-commercial or charitable purposes at or on a particular location or site where said dogs or cats are restrained or confined within a fence, building, structure or other enclosure.

(b) It shall be unlawful for any person, firm, cooperation, unincorporated association, partnership, joint venture, charitable organization or other legal entity to maintain or operate a kennel within Rockdale County in which the number of dogs exceeds 150 in number [sic], or in which the number of cats exceeds 50 in number.

(c) In determining the population limits of a kennel, joint ownership or joint control of separate kennel sites or locations by the same person, firm, cooperation, unincorporated association, partnership, joint venture, charitable organization or other legal entity shall cause all dogs and/or cats involved in such jointly owned or jointly controlled separate kennel sites or locations to be added together and counted as one kennel—if the kennel sites or locations are located within one nautical mile of each other.

(d) This ordinance is intended to prohibit the concentration of dogs and cats so that kennel operations shall not disturb the peace, tranquility, and serenity of the various neighborhoods in this County and further is intended to protect the public health, safety and welfare relative to various diseases originating with large concentrations of animals. This ordinance shall be liberally construed to accomplish the foregoing intent and purposes.

(e) Any violation of this Ordinance shall subject the offender to a fine of Five Hundred and no/100 ($500.00) Dollars and/or up to thirty (30) days in the common jails of Rockdale County for each forty-eight (48) hour period that said violation continues.

SECTION 2

This Ordinance is not intended to repeal or to modify the zoning laws or regulatory ordinances of Rockdale County relative to kennels and dogs or cats but as supplementary thereto.

SECTION 3

This Ordinance shall be in force and take effect upon adoption.

Adopted this 14th day of September, 1984.

these orders and moved for stays. The superior court denied a stay. The Fields then filed a motion for supersedeas, which was denied, and the denial was affirmed by the Georgia Supreme Court on February 20.

On February 25, the day of expiration of the deadline for removal set by the superior court, the Fields filed this suit against the county in the U.S. District Court, praying for damages and temporary and permanent injunctive relief. The complaint alleged fraud and conspiracy in the county's defense of the homeowners association litigation, thus depriving the Fields of due process, contractual rights, and freedom of religion. The complaint also alleged that the kennel ordinance was arbitrary and unreasonable, that it was the basis of the county's refusal to grant building permits for the Miller Bottom tract, and that it created a suspect class "directed against" the Fields. The complaint further alleged that the Fields applied on November 30, 1984 for development permits for Miller Bottom and that the County had refused, in part because of the kennel ordinance, to issue the permits. Also, the Fields alleged that the kennel ordinance was selectively enforced and that the county's refusal to grant building permits for the Miller Road site was a taking without just compensation. The homeowners association was permitted to intervene, and the Fields amended their complaint to include allegations against the association.

On February 26, 1985 the district court granted the Fields a temporary restraining order, and on March 25 the court issued a preliminary injunction against the county. The court found that it had no jurisdiction over the allegations related to the litigation of the setback ordinance at Farmer Road, citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).[2] The district court held that abstention doctrines did not bar its exercise of jurisdiction over the allegations related to the kennel ordinance. In its analysis of the propriety of abstention under the doctrine of *Young-*

*er v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the court noted that the constitutionality of the kennel ordinance had not been raised in earlier state court proceedings and that relief could be framed that would not affect pending state proceedings. As for abstention under the doctrine of *Railroad Comm'n v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the court found that the Fields had "not articulated any real question of state law [and], in any event ... there is no indication that the state law to be applied is unsettled or involves a unique state constitutional issue...."

Having crossed the abstention threshold, the district court applied the familiar four-part test to determine the propriety of preliminary injunctive relief, *see Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 249, 83 L.Ed.2d 187 (1984) and concluded that the relevant factors, including a reasonable likelihood that the Fields would ultimately prevail in their federal equal protection challenge, warranted a preliminary injunction.

The county appealed. It issued development permits for the Miller Bottom property on May 3, 1985 but reserved its legal rights, specifically those at issue here. The intervenor association is not a party to this appeal.

## DISCUSSION

Abstention is "an extraordinary and narrow exception to the duty of a [federal] Court to adjudicate a controversy properly before it," and is justified "only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Allegheny County v. Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). Abstention questions must be resolved by close attention to the facts of each case. *Baggett v. Bullitt*, 377 U.S. 360, 375–79, 84 S.Ct. 1316, 1324–26, 12 L.Ed.2d 377 (1964);

2. The Fields have not raised the correctness of    this ruling.

*Ross v. Houston Indep. School Dist.*, 559 F.2d 937, 942 (5th Cir.1977). In this case there are exceptional circumstances and countervailing interests.[3]

Matters of land use planning are primarily of local concern, *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058 (1959). The "routine application of zoning regulations ... is distinctly a feature of local government," *Hill v. City of El Paso*, 437 F.2d 352, 357 (5th Cir.1971). In *Hill*, the issue was whether plaintiff's business was a public garage or a "junk" yard and, if the latter, whether the city ordinance proscribing junkyards was impermissibly vague under the federal constitution. Plaintiff sought an injunction of state civil and criminal proceedings and a declaration that the zoning ordinance was unconstitutional. Noting that the ordinance was unclear on its face and that a state court decision could moot the federal constitutional question, *Hill* held that the facts presented a "classic" case for abstention under *Pullman*.

In the present case there is no parallel unclarity as to whether the Fields operate a "kennel", but there is considerable lack of clarity surrounding the possible application of the kennel ordinance to the Fields' operations. Even if the kennel ordinance were a model of clarity, there is a "fair possibility" that a state court would strike it as contrary to the Georgia constitution, which would avoid the necessity of reaching federal constitutional questions. *See* C.

Wright, The Law of Federal Courts 304 (1983); *see also, Avant v. Douglas County*, 253 Ga. 225, 319 S.E.2d 442 (1984) (striking, on unspecified constitutional grounds, an ordinance "limiting the number of animals per tract without taking into consideration the size of the tract"), *following Barrett v. Hamby*, 235 Ga. 262, 219 S.E.2d 399 (1975) (striking zoning ordinance on Fourteenth Amendment and Georgia constitutional due process grounds).

Abstention is not necessarily appropriate if the relevant state constitutional provision "is the mirror of the federal one." Wright at 305; *see also, Examining Board v. Flores de Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976). The relevant Georgia constitutional provision [4] does mirror the language of the Fourteenth Amendment due process clause, but the Georgia decisional law represented by *Avant* and *Barrett* is a strain of substantive due process [5] that extends protections beyond what federal due process alone affords. *Cf. Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (federal due process is not an independent source of property rights). Therefore the kennel ordinance is part of a whole that resembles in important respects the "integrated scheme of related constitutional provisions, statutes and regulations [which] as a whole" called for "clarifying interpretation by the state courts" in *Harris Cty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83, 85 n. 8, 88, 95

---

**3.** The case presents factors that evoke concerns that have shaped both the *Railroad Comm'n v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) abstention doctrines. Their conjunction "militates in favor of staying our hand." *Gibson v. Jackson*, 578 F.2d 1045, 1051 (5th Cir.1978), *cert. denied*, 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979).

**4.** Article I, section 1, paragraph 1 of the Georgia constitution reads: "No person shall be deprived of life, liberty, or property except by due process of law."

The Georgia Supreme Court has held that the protections of Georgia's due process clause may exceed those of the Fourteenth Amendment. *National Mtg. Corp. v. Suttles*, 194 Ga. 768, 22

S.E.2d 386, 389 (1942); *cf. BT Investment Mgrs., Inc. v. Lewis*, 559 F.2d 950, 954 & n. 15 (5th Cir.1977) (rejecting *Pullman* abstention, citing Florida Supreme Court decision that Florida constitutional provision is "coextensive" with Fourteenth Amendment due process clause).

**5.** This court declined to abstain from deciding a challenge based on state substantive due process decisional law in *Henley v. Herring*, 779 F.2d 1553 (11th Cir. Jan. 14, 1986). The facts of *Henley* differ in important ways from those presented here. There was no concurrent state court litigation, and the challenge was directed against the use of a state vacation procedure that had been clarified by extensive consideration in the state courts.

S.Ct. 870, 875, 876 n. 8, 877, 43 L.Ed.2d 32 (1975); *see also Hill,* 437 F.2d at 356 (noting the city's argument that its ordinance was drafted to conform to state constitutional decisional law). That the kennel ordinance has never been construed by a state court is a further circumstance favoring abstention. *See Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 511, 92 S.Ct. 1749, 1758, 32 L.Ed.2d 257 (1972); *Abell v. Frank,* 625 F.2d 653, 656–58 (5th Cir.1980).

This court has abstained from deciding land use disputes involving zoning, *see Hill,* and the exercise of eminent domain, *see Fountain v. MARTA,* 678 F.2d 1038, 1046 (11th Cir.1982); *Creel v. City of Atlanta,* 399 F.2d 777, 779 (5th Cir.1968), where there were concurrent proceedings[6] in the state courts. Here, there is a land use dispute implicating concurrent state court proceedings that present a comparable threat of inconsistent outcomes and attendant friction. "[T]he federal court should not exert jurisdiction if the plaintiffs 'had an *opportunity* to present their federal claims in the state proceedings,'" but did not do so. *Moore v. Sims,* 442 U.S. 415, 425, 99 S.Ct. 2371, 2378, 60 L.Ed.2d 994 (1979), *quoting Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977) (emphasis in original). That the new kennel ordinance has been cited in no pleading or motion in the pending state litigation does not mean that the facts calling for abstention are any less compelling. There is no indication that the kennel ordinance cannot be challenged[7] in superior court now.

The record does not reveal what impact on the Farmer Road site compliance with the February 1985 superior court order would have.[8] It is possible therefore that the state court will be called upon[9] to exercise its continuing jurisdiction to apply the kennel ordinance to a residual animal population at Farmer Road, while, in the meantime, the federal court deals with the application of the ordinance to Miller Bottom. This possibility presents more than the prospect of "parallel ... proceedings" in state and federal court with respect to distinct parcels of real estate. *Cf. Fountain,* 678 F.2d at 1046 & n. 14. The kennel ordinance by its terms would count geographically distinct kennels within a nautical mile of one another as a single kennel. The record does not establish whether the Farmer Road and the Miller Bottom sites are to be counted as one under the ordinance. The "possibility of inconsistent judgments" and "insuperable difficulties ... over the proper remedy" evident here are exceptional circumstances favoring abstention by the federal court. *See Fountain,* 678 F.2d at 1046; *Creel,* 399 F.2d 779.

We note the indications in the record that the county does not intend to press the kennel ordinance against the Fields until

---

6. *Younger* abstention may not be proper where the district court

> properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."

*Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611, 95 S.Ct. 1200, 1212, 43 L.Ed.2d 482 (1975). The district court made no such findings here.

7. *See e.g.,* Ga.Code Ann. §§ 23–4–31 ("Power of court to mold and enforce decrees"), 9–11–60 ("Relief from judgments") (1982 & 1984 Supp.); *City of Cordele v. Hobby,* 240 Ga. 207, 240 S.E.2d 16 (1977) (upon verdict finding nuisance, court is to "mold its decree to meet the exigencies of the case ...").

8. Although the superior court order of January 1984 enjoined the Fields from operating the shelter at Farmer Road, the apparently superceding February 1985 order suggests that the Fields comply by "[r]eorganiz[ing] ... the use of existing structures [at Farmer Road] that are in compliance with the setback requirements, so that as many animals as humanely possible are housed in structures that do not violate the setback requirements." The federal court's order of February 26, 1985, granting temporary injunctive relief, found it unclear "whether the shelter can be reorganized on its present location to comply with the setback requirements."

9. The homeowners association has stated that it is interested in closing down the Farmer Road kennel altogether, an interest that it asserts the county does not share. See Motion of Homeowners Association to Intervene, Record at 93.

the constitutional issues raised here have been adjudicated. "[T]he District Court of course possesses ample authority in this action, or in such supplemental proceedings as may be initiated, to protect the appellees" while awaiting the judgment of the state courts. *Harrison v. NAACP*, 360 U.S. 167, 178–79, 79 S.Ct. 1025, 1031, 3 L.Ed.2d 1152 (1959); *see also, Babbitt v. Farm Workers*, 442 U.S. 289, 312 n. 18, 99 S.Ct. 2301, 2316 n. 18, 60 L.Ed.2d 895 (1979). Accordingly, we vacate the judgment and remand to the district court with instructions to afford the Fields a reasonable opportunity to bring their claims in state court, meanwhile to retain jurisdiction for further proceedings consistent with this opinion.

VACATED and REMANDED with directions.