**John CARROLL, Plaintiff,**

v.

**CITY OF PRATTVILLE, an Alabama municipal corporation, et al., Defendants.**

Civ. A. No. 86–D–1045–N.

United States District Court, M.D. Alabama, N.D.

Feb. 19, 1987.

J. Fairley McDonald, III, and Richard H. Gill, of Copeland, Franco, Screws & Gill, P.A., Montgomery, Ala., and Joe Macon, Jr., Wetumpka, Ala., for plaintiff.

Douglas Corretti and Jesse P. Evans, III, Corretti & Newsom, Birmingham, Ala., for defendants.

DUBINA, District Judge.

## MEMORANDUM OPINION

This cause is now before the Court on a motion to dismiss filed herein by the defendants on December 2, 1986. Pursuant to this motion, the defendants proffer thirty-seven separate grounds for dismissal of this cause. However, via their memorandum brief filed herein on January 7, 1987, in support of said motion, the defendants have grouped their contentions and/or grounds for dismissal into the following four categories: (1) Abstention, (2) Failure of the complaint to state a claim for inverse condemnation, (3) Immunity, and (4) Failure of the complaint to state a claim for a deprivation of substantive due process.

On January 9, 1987, the plaintiff filed herein a memorandum brief in opposition to the defendants' motion to dismiss. Having considered the defendants' motion, as well as the memorandum briefs of the parties and oral arguments of counsel heard in open court on January 16, 1987, this Court is of the opinion, for reasons expressed below, that the defendants' motion to dismiss is due to be granted in part and denied in part.

## I. ALLEGATIONS OF FACT

This is a cause of action brought pursuant to 42 U.S.C. § 1983 in which the plaintiff claims that the defendants have, under color of state law, deprived him of his Fifth and Fourteenth Amendment rights to just compensation and substantive due process. The plaintiff's claims arise out of the alleged failure and/or refusal of the defendants to zone or rezone a particular parcel of property owned by the plaintiff so as to permit the plaintiff to develop the property as a residential subdivision.

This Court has subject matter jurisdiction over this cause pursuant to 28 U.S.C. §§ 1331 and 1343(3).

The plaintiff alleges that, in 1979, he purchased approximately sixty acres of real property in Elmore County, Alabama, said property being adjacent to an existing residential subdivision known as "Scenic Hills." The plaintiff alleges that he purchased said real property for the purpose of developing and subdividing the same into residential lots and then selling those lots to third parties for the construction of single-family residences. More specifically, the plaintiff alleges that he planned to create from the subject property two thirty-acre additions to the said existing Scenic Hills Subdivision. One addition (referred to by the plaintiff as the "Second Addition") would be subdivided into approximately one hundred residential lots, while the other addition (referred to by the plaintiff as the "Third Addition") would be divided into approximately ninety-six lots.

The plaintiff alleges that when he purchased the subject real property in 1979, neither the subject property nor the existing Scenic Hills Subdivision were located within the corporate boundaries of the defendant City of Prattville. Consequently, neither the subject property nor the existing subdivision were subject to the defendant City's regulations and ordinances pertaining to the zoning of real property.

The plaintiff alleges that, subsequent to his purchase of the subject property, he contacted the defendants about the possibility of connecting the sanitary sewer lines for the subject property to certain sewer lines and outfalls already maintained by the defendant City in the area. The plaintiff alleges that, following discussions with the defendants on this matter, a written agreement, dated February 26, 1980, was entered into between the defendant City and the plaintiff.[1] The plaintiff alleges that, under the terms of said agreement, the defendant City agreed to allow the plaintiff to connect the sanitary sewer lines for the subject property to the said existing sewer lines and outfalls maintained by the defendant City in the Scenic Hills area. In exchange for such, the plaintiff allegedly agreed to design and construct the subject property in accordance with design criteria, specifications and other rules and regulations of the defendant City which are applicable to property located within the corporate limits of the City of Prattville. Additionally, the plaintiff allegedly agreed to plan, develop and construct the subject property for single-family residential use in accordance with the "R–3" zoning classification of the defendant City's zoning ordinance.[2]

The plaintiff alleges that, in reliance upon the February 26, 1980, agreement, he proceeded with his plans for the development of the Second and Third Additions to the Scenic Hills Subdivision. As to the Second Addition, plaintiff alleges that his development efforts resulted in the sale of all one hundred lots, with houses and other improvements having now been erected thereon. As to the Third Addition, however, plaintiff alleges that unfavorable economic conditions caused him to postpone development of the same until early 1985. At that time, plaintiff alleges that he expended considerable sums of money for the preparation of a plat for the Third Addition. The plaintiff alleges that this plat proposed to subdivide the thirty acres contained in the Third Addition into approximately ninety-six lots which would meet the criteria for R–3 zoning under the defendant City's zoning ordinance. Additionally, the plaintiff alleges that his plat proposed each lot would be restricted to single-family residential use. The plaintiff alleges that "the City" gave him approval to proceed with the development of the Third Addition in accordance with this plat.

The plaintiff alleges that on or about May 7, 1985, the Alabama Legislature approved Act No. 85–473, which Act effectively annexed to the City of Prattville, not only the Scenic Hills Subdivision, but also the Second and Third Additions thereto. The plaintiff alleges that after this annexation he was advised by the defendant City to suspend the ongoing development of the Third Addition, notwithstanding "the City's" prior approval of the development of the same.[3]

1. The plaintiff alleges that this agreement was executed by himself, as developer, by C.M. Gray in his capacity as Mayor of the City of Prattville, and by defendant Smith in his capacity as President of the Prattville City Council. The plaintiff further alleges that, upon information and belief, the defendant members of Prattville's City Council knew of and approved the terms of said agreement.

2. The plaintiff alleges that the R–3 zoning classification permits use of property for either single or multi-family residential dwellings, with a pre-

scribed individual lot size of at least 7,500 square feet. The plaintiff further alleges that the Scenic Hills Subdivision, i.e., that property adjacent and contiguous to the subject property, has, at all relevant times hereto, been consistent with the R–3 criteria in all material respects.

3. As will be seen infra, it is unclear from the allegations contained in the instant complaint as to what approval the plaintiff received from the City concerning the development of the Third Addition. The Court notes that on the one hand, the plaintiff seemingly alleges that at

The plaintiff alleges that in July of 1985, the Planning Commission of the City of Prattville sought to address the question of how the Scenic Hills Subdivision, as well as the developed Second Addition thereto and the proposed, but undeveloped, Third Addition thereto, was to be zoned under the Prattville zoning ordinance. The plaintiff alleges that on July 18, 1985; August 15, 1985; September 5, 1985; and September 19, 1985, the said Planning Commission conducted public meetings and hearings concerning the zoning of the Scenic Hills area property. The plaintiff alleges that at the meeting of September 19, 1985, representatives of the Central Alabama Regional Planning and Development Commission[4] submitted three proposals for the zoning of Scenic Hills property; one of which proposed that the original Scenic Hills Subdivision be zoned as R–2 property,[5] the Second Addition as R–3, and the as-yet-undeveloped Third Addition as "FAR" property.[6] The plaintiff alleges that the above-described proposal was ultimately unanimously approved by the Planning Commission for recommendation to the Prattville City Council.

The plaintiff alleges that, at the meeting of September 19, 1985, he presented his plat for the Third Addition to the Planning Commission for preliminary approval in accordance with the defendant City's subdivision regulations. The plaintiff alleges that, unlike the proposal adopted by the Commission, his plat proposed that the property would conform to the requirements of the R–3 classification in the City's zoning ordinance. Additionally, the plaintiff alleges that he requested the Commission to consider the rezoning of the Third Addition from the FAR classification to the R–3 classification, with the plaintiff allegedly agreeing that he would commit to construction of only single-family dwellings, instead of multi-family units, in the Third Addition.

On October 7, 1985, the plaintiff alleges that the Planning Commission conducted a public hearing in order to consider plaintiff's request concerning the rezoning of the Third Addition and the approval of his plat for the same. The plaintiff alleges that, after receiving public comments, the Planning Commission approved a recommendation to the City Council defendants that the Third Addition property be rezoned from FAR to R–3. On or about November 12, 1985, the plaintiff alleges that the Planning Commission likewise unanimously granted his request for approval of this plat for the Third Addition.

The plaintiff alleges that on December 3, 1985, the City Council defendants held a public hearing to consider the approval of the Planning Commission's recommendation that the Scenic Hills Third Addition property be rezoned from FAR to R–3. The plaintiff alleges that, upon conclusion

some time prior to May 7, 1985, he received approval from "the City" to proceed with the development of the Third Addition in accordance with the said plat. On the other hand, this Court notes plaintiff's allegations that the said plat was not even reviewed and approved by the Subdivision Committee of Prattville's Planning Commission until a meeting of said committee on August 27, 1985, approximately four months following the annexation of said property to the City of Prattville. Thus, given plaintiff's further allegation that the Planning Commission has the authority only to recommend action to the City Council, this Court does not understand, at this juncture, the scope of the approval plaintiff allegedly received concerning the development of the Third Addition.

**4.** Plaintiff alleges that this Commission is an organization which provides planning and zoning consultation services to municipalities and other governmental bodies within the State of Alabama.

**5.** The allegations contained in the complaint provide no definition as to what constitutes R–2 property under the zoning ordinance of the City of Prattville.

**6.** The plaintiff alleges that property zoned under the FAR category of the City of Prattville's zoning ordinance, may be used for forest, agricultural and recreational purposes, as well as single-family residential use with individual lot sizes of at least 40,000 square feet. Additionally, this Court notes plaintiff's allegation that the proposal to zone the Third Addition as FAR property was in accordance with what the plaintiff alleges to be an informal policy on behalf of the City of Prattville to zone newly-annexed land as FAR until property owners request otherwise.

of this hearing, the City Council defendants convened their regularly scheduled meeting and, thereupon, unanimously approved a resolution which provided that the Third Addition remain zoned as FAR property. The plaintiff alleges that the City Council defendants gave no reasons for their actions, and, in spite of plaintiff's numerous requests, said defendants have refused to act definitively on the proposed ordinance recommended by the Planning Commission.

Upon the basis of the foregoing factual allegations, the plaintiff contends that the defendants have violated plaintiff's right to substantive due process under the Fourteenth Amendment to the United States Constitution by arbitrarily and capriciously denying the requested zoning. Further, the plaintiff contends that the defendants have violated the Fifth Amendment by effectively taking his property without just compensation.

## II. ISSUES

As framed by the defendants' motion to dismiss, the issues presently before this Court are as follows:

(1) Whether this Court should abstain from deciding this action;

(2) Whether the complaint fails to state a claim against the defendants for inverse condemnation (Count II);

(3) Whether the defendants are entitled to a dismissal from this cause on the grounds of Eleventh Amendment immunity; and

(4) Whether the complaint fails to state a claim against the defendants for a substantive due process violation (Count I).

Each of these issues will be discussed separately below.

■ A. **Abstention.**[7] Abstention is a judicially created doctrine through which federal courts decline to exercise their jurisdiction in order to prevent unnecessary

friction between the federal and state governments. In essence, the philosophy of the abstention doctrine is that, under certain circumstances, federal district courts should decline to exercise jurisdiction over a particular cause in order to serve important countervailing state interests. *See Allegheny County v. Mashuda Company,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). However, "[a]bstention is 'an extraordinary and narrow exception to the duty of a [federal] court to adjudicate a controversy properly before it,' and ... [a]bstention questions must be resolved by close attention to the facts of each case." *Fields v. Rockdale County, Georgia,* 785 F.2d 1558, 1560 (11th Cir.1986) (*quoting Allegheny County, supra,* 360 U.S. at 188–89, 79 S.Ct. at 1063, 3 L.Ed.2d at 1166). *See also Baggett v. Bullitt,* 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). Accordingly, the question of when the doctrine of abstention ought to be invoked is a matter that involves the exercise of discretion. *See Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

■ Consistent with its perception of abstention as a narrow exception to the general rule that federal district courts should exercise jurisdiction over cases properly before them, the United States Supreme Court has defined a limited number of situations in which abstention is appropriate. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, *reh. den.,* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976). Basically, there are three types of abstention, each motivated by a separate and distinct concern for comity and federalism, which are the important countervailing interests lying at the heart of the abstention doctrine. *See Planned Parenthood League of Massachusetts v. Bellotti,* 608

---

**7.** In light of this Court's opinion, *infra,* that plaintiff's claim of inverse condemnation (Count II) is due to be dismissed at this time for failure to state a cognizable claim against the defendants, this Court declines to consider the

question of whether the abstention doctrine is applicable to said claim. Accordingly, this Court's discussion of the abstention doctrine will relate only to plaintiff's claim of a deprivation of substantive due process (Count I).

F.Supp. 800, 808 (D.C.Mass.1985). First, there is the so-called *Younger* abstention under which a federal court will abstain from hearing a case where there is a pending state court criminal or quasi-criminal action. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Second, there is the so-called *Pullman* abstention under which a federal court will abstain when there is an unsettled question of state law, the disposition of which may obviate the need to reach a federal constitutional question. *See Railroad Comm'n of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Third, there is the so-called *Burford* abstention under which a federal court may abstain in order to avoid deciding an issue which would interfere with a state's attempt to establish or maintain a coherent state policy with respect to a matter of important state concern. *See Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Since it is apparent from the circumstances of the instant case that *Younger* abstention is inapplicable,[8] and *Burford* abstention has been held by the Eleventh Circuit Court of Appeals to be inapplicable in Alabama cases challenging the constitutionality of zoning ordinances,[9] this Court must determine only whether *Pullman* abstention is appropriate under the facts and circumstances of this case.

Under the *Pullman* abstention doctrine, when a state law is being challenged in federal court as unconstitutional and there are questions of state law which may be dispositive of the case, a federal court should abstain from deciding the case and allow the state courts to decide the state issues. Stated otherwise, *Pullman* abstention allows the federal district court to stay proceedings before it in order to provide the state courts an opportunity to settle underlying, unsettled questions of state law, thus avoiding the possibility of a federal court unnecessarily deciding constitutional questions. *See Allegheny County, supra,* 360 U.S. at 189, 79 S.Ct. at 1063, 3 L.Ed.2d at 1166; *Henley v. Herring,* 779 F.2d 1553 (11th Cir.1986). Accordingly, *Pullman* abstention imposes two prerequisites to its invocation: (1) that a pertinent question of state law be unsettled; and (2) that a state court ruling on the question might dispose of the federal constitutional claim or present such a claim in a different posture. *See Allendale Leasing, Inc. v. Stone,* 614 F.Supp. 1440, 1452 (D.C.R.I. 1985), *aff'd,* 788 F.2d 830 (1st Cir.1986); *Lacey v. Borough of Darby, Pa.,* 618 F.Supp. 331 (E.D.Pa.1985).

In applying the foregoing rules and principles of *Pullman* abstention to the factual allegations herein, this Court is of the opinion that plaintiff's claim in Count I of the complaint fails to satisfy the prerequisites for *Pullman* abstention. As to the requirement that there be a pertinent and unsettled question of state law, the defendants contend that, since there is no statewide statute applicable to municipal zoning of newly-annexed property, it is unclear as to what standards the appellate courts of the State of Alabama would apply to actions of a municipality in zoning or rezoning newly-annexed property. However, such a contention by the defendants ignores the plain allegations of Count I of the complaint. Therein, it is clear that the plaintiff is not challenging the *authority* of the defendants to zone newly-annexed

---

**8.** As stated above, *Younger* abstention is applicable only in situations in which there is a pending state court criminal or quasi-criminal action. *See Middlesex Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Herein, there is no allegation of a criminal or quasi-criminal proceeding pending in state court.

**9.** In *Nasser v. City of Homewood,* 671 F.2d 432 (11th Cir.1982), the Court held that the district court erred in applying the *Burford* abstention

doctrine to the plaintiff's claim that a zoning ordinance was arbitrary and capricious. In so holding, the Court pointed out that (1) because abstention on *Burford* grounds is a refusal to exercise federal jurisdiction in an entire class of cases, and (2) because Alabama has no established forum for resolution of zoning disputes, there is no state interest in uniformity which would be disrupted by federal review of zoning ordinances.

property, but instead, the plaintiff is questioning the *exercise* of that authority as such pertains to the Third Addition property; *i.e.,* whether that exercise of authority was arbitrary and capricious as a matter of federal constitutional law. Accordingly, since federal courts may review zoning decisions attacked as arbitrary and capricious under the substantive due process clause of the Fourteenth Amendment, *see, Nasser v. City of Homewood,* 671 F.2d 432, 441 (11th Cir.1982), and, since the due process clause of the Alabama Constitution (*see Constitution of Alabama,* §§ 6, 13 (1901)) affords at least the same degree of protection to the plaintiff as does the due process clause of the Fourteenth Amendment to the United States Constitution, this Court is of the opinion that no pertinent and unsettled question of state law exists herein, the disposition of which may obviate the need to reach the federal constitutional issue. Indeed, abstention is not required where the state constitutional provision is a mirror of the federal one. *See, Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Therefore, to the extent the defendants' motion to dismiss seeks an order of abstention from this Court, said motion is due to be denied.

B. **Immunity.** Pursuant to his complaint, the plaintiff has brought this action against the following defendants: The City of Prattville, an Alabama municipal corporation; Malcolm D. Smith, William W. Gillespie, E.T. Waldren, Wilton C. Moates, and George P. Walthall, Jr., individually and in their official capacities as members of the City Council for the City of Prattville, Alabama. Further, as to all defendants, the plaintiff seeks injunctive relief, compensatory and punitive damages. Pursuant to their motion to dismiss, the defendants contend, *inter alia,* that (1) the defendant City of Prattville is immune from plaintiff's claim for punitive damages; and (2) the individual defendants are absolutely immune from plaintiff's claims for injunctive relief and monetary damages. In part, this Court agrees.

As to the defendant City of Prattville, it is well-established law that, in the context of a § 1983 action, municipal liability must be predicated on more than a respondeat superior theory. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose acts may fairly be said to represent official policy, inflicts the injury that government as an entity is responsible under § 1983. *See, Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Further, in such a case, local governmental entities can be sued directly for damages and injunctive or declaratory relief. *See Memphis Police Department v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). However, in no event, are punitive damages available under § 1983 from a municipal defendant. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Accordingly, to the extent that the defendants' motion to dismiss seeks dismissal of any punitive damage claims against the defendant City of Prattville, said motion is due to be granted.

As to the individual defendants, said defendants contend that, to the extent the plaintiff sues them in their official capacities, they are absolutely immune inasmuch as the actions which are complained of herein are characterized by state law as being actions conducted in accordance with legislative authority, as opposed to discretionary authority. The plaintiff contends, on the other hand, that since the allegations of the complaint clearly show that said defendants were acting in a purely discretionary capacity with respect to a single identifiable parcel of land, said defendants are not entitled to absolute immunity.

In *Lake County Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), the United States Supreme Court held that officials of a *regional* governmental body are absolutely immune from a § 1983 damage claim when acting in a legislative capacity. However, the Court expressly left open the

question of whether individuals performing legislative functions at the purely *local* level should be afforded absolute immunity from federal damage claims in a § 1983 action. *See, Tahoe Regional, supra,* 440 U.S. at 404, n. 26, 99 S.Ct. at 1178, n. 26, 59 L.Ed.2d at 412, n. 26. Notwithstanding this lack of direction from the Supreme Court on the question of whether absolute immunity is available to local, as opposed to regional government officials acting in their legislative capacity, the Eleventh Circuit Court of Appeals has extended the *Tahoe Regional* rule to apply to local legislatures acting in a legislative capacity. In *Espanola Way Corp. v. Meyerson,* 690 F.2d 827 (11th Cir.1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983), the Court stated as follows:

> [T]he Fifth Circuit has recognized [absolute immunity under § 1983] in favor of local legislators for conduct in furtherance of their legislative duties. *Hernandez v. City of LaFayette,* 643 F.2d 1188 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). However, the Supreme Court has long held that no immunity exists for actions outside the sphere of legitimate legislative activity. *Teeney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). "[I]t is the official *function* that determines the degree of immunity required, not the *status* of the acting officer." *Marrero [v. City of Hialeah,]* 625 F.2d [499], [508 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981) ] (emphasis in original). Imposing liability upon the Commissioners for actions conducted outside their legislative role does not undermine the policies granting immunity to certain officials. *See, e.g., Marrero,* 625 F.2d at 509.

*Id.* at 829.

◼ Accordingly, this Court agrees with the defendants that, to the extent they were acting in a legislative capacity, said defendants are entitled to absolute immunity from all damage claims in a § 1983 action.[10]

◼ Having established that absolute immunity may be available to the individual defendants, the question now becomes whether said defendants in the instant case were engaging in protected legislative activity or, instead, acting in a purely discretionary capacity. In *Marshall v. City of Mobile,* 250 Ala. 646, 35 So.2d 553 (Ala. 1948), the Supreme Court of Alabama stated as follows:

> The courts recognize that in the passing of such general zoning ordinances, the municipal authorities *act in a legislative capacity,* and that their superior opportunity to know and consider the varied and conflicting interests involved, to balance the burdens and benefits, [and] to lay out zoning districts with a view to the general welfare of the city, render the courts slow to set up their own opinions as against those charged with and in position to rightly perform such duty. Before the courts will interfere, it must be made to appear that such an ordinance passes the bounds of reason and assumes the character of a merely arbitrary fiat. (Emphasis supplied.)

*Id.* at 649, 555, 35 So.2d 553.

Accordingly, though the plaintiff contends that there has been no showing that the individual defendants herein were operating in any legislative capacity when they made the decisions that affected the plaintiff, it appears to this Court that such a showing is not necessary. Instead, based upon the above-cited authorities, this Court is of the opinion that, as a matter of Alabama law, municipal authorities act in a legislative capacity in the enactment of zoning ordinances.[11] Therefore, this Court is

---

10. *See also Cinevision Corp. v. City of Burbank,* 745 F.2d 560, 577, n. 22 (9th Cir.1984), wherein the Ninth Circuit Court of Appeals cites numerous cases from various circuits which have extended the *Tahoe Regional* rule to provide absolute immunity to local legislators acting in a legislative capacity.

11. It does appear to this Court, however, that some distinction may be made between the *enactment* of a zoning ordinance and the *imple-*

of the opinion that all monetary damage claims against the individual defendants in their official capacities are due to be dismissed.

C. **Inverse Condemnation.** The defendants next contend that the plaintiff's Fifth Amendment claim for inverse condemnation is due to be dismissed inasmuch as the same fails to state a claim upon which relief may be granted. More specifically, the defendants contend that, even if the bare allegations of the complaint are assumed to be true, the "taking" question is not properly before this Court since the plaintiff has failed to show either that he has sought compensation through a post-taking state remedy or that no such post-taking remedy exists. In the absence of such a showing, the defendants contend that plaintiff's Fifth Amendment claim is due to be dismissed pursuant to Rule 12(b)(6), *Federal Rules of Civil Procedure.* This Court agrees.

In *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the United States Supreme Court held that, "... a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Hamilton Bank, supra,* 473 U.S. at 186, 105 S.Ct. at 3117, 87 L.Ed.2d at 139. Further, and more importantly here, the Court in *Hamilton Bank* held that, "... if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the just compensation clause [of the Fifth Amendment] until [the property owner] has used the procedure and been denied just compensation." *Hamilton Bank, supra,* 473 U.S. at 172, 105 S.Ct. at 3121, 87 L.Ed.2d at 144. Accordingly, after noting that the relevant state law gave to plaintiff a cause of action for inverse condemnation in order to obtain just compensation for an alleged taking of property by the government, the Court in *Hamilton Bank* concluded that, since "[r]espondent has not shown that the inverse condemnation procedure is unavailable or inadequate, and until [he] has utilized that procedure, [his] taking claim is premature." *Hamilton Bank, supra,* 473 U.S. at 196–197, 105 S.Ct. at 3122, 87 L.Ed.2d at 145. *See also MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. ——, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986).

In applying the *Hamilton Bank* rule to the instant case, this Court is of the opinion that the plaintiff's Fifth Amendment claim (Count II) is due to be dismissed inasmuch as the plaintiff has admittedly failed to utilize Alabama's post-taking remedy of an inverse condemnation action.[12] Indeed, as recognized by the plaintiff himself, it has long been the rule of law in Alabama that an inverse condemnation action may be maintained against the state or a subdivision thereof if private property is taken by an entity having the power of condemnation and that taking is without the payment of just compensation. *See Middleton v. St. Louis & S.F.R. Co.,* 288 Ala. 323, 153 So. 256 (1934); *Hunter v. City of Mobile,* 244 Ala. 318, 13 So.2d 656 (1943); *Engelhardt v. Jenkins,* 273 Ala.

---

*mentation* of a zoning ordinance to a particular piece of property. To the extent that the actions of the defendants herein constitute an implementation of a zoning ordinance rather than the enactment of a zoning ordinance, this Court is of the opinion that such a distinction is insignificant. Indeed, the Supreme Court of Alabama has clearly held in numerous cases that zoning matters are legislative matters and when a city's governing body considers a zoning ordinance, that body acts in a legislative capacity. *See Come v. Chancy,* 289 Ala. 555, 269 So.2d 88 (Ala.1972); *Priest v. Griffin,* 284 Ala. 97, 222

So.2d 353 (Ala.1969); *Waters v. City of Birmingham,* 282 Ala. 104, 209 So.2d 388 (Ala.1968).

**12.** Since the defendants do not appear to dispute plaintiff's allegation that the defendants' actions are administratively final, this Court declines to discuss this issue. The Court does note, however, that in *Hamilton Bank,* the Court alternatively held that a Fifth Amendment claim for an alleged taking of property is not ripe in federal court until administrative remedies (*i.e.,* the seeking of variances, etc.) have been pursued.

352, 141 So.2d 193 (1962); *McClendon v. City of Boaz*, 395 So.2d 21 (Ala.1981). *See also Constitution of Alabama*, § 23 (1901); and *Code of Alabama*, § 18–1A–32(a) (1984 Replacement Volume), providing that if property is to be acquired by a condemnor through the exercise of its power of eminent domain, the condemnor shall not intentionally make it necessary for an owner of property to commence an action, including an action in inverse condemnation, to prove the fact of the taking of his property. Accordingly, since the plaintiff has failed, at the very least, to avail himself of his right to bring an inverse condemnation action in state court, his Fifth Amendment claim herein is due to be dismissed on the ground that the same fails to state a cognizable claim in federal court.

D. **Substantive Due Process.** Finally, the defendants contend that plaintiff's claim of a deprivation of substantive due process (Count I) is due to be dismissed for failure to state a claim upon which relief may be granted. This Court does not agree.

At the outset, this Court is mindful of the well-established rule that when considering a motion to dismiss under Rule 12(b)(6), *Federal Rules of Civil Procedure,* the material allegations of the complaint are to be taken as true and liberally construed in the plaintiff's favor. *See Burch v. Apalachee Community Mental Health Services, Inc.,* 804 F.2d 1549 (11th Cir. 1986). Further,

[F]or the purposes of determining the sufficiency of a claim, the likelihood of recovery is irrelevant. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). As the Supreme Court observed, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. This Court has acknowledged that "a complaint should not be dismissed for failure to state a claim pursuant to *Fed.*

*R.Civ.P.* 12(b)(6) unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief." *Bradberry v. Pinellas County,* 789 F.2d 1513, 1515 (11th Cir.1986) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). *Little v. City of North Miami,* 805 F.2d 962, 965 (11th Cir.1986). Accordingly, given these principles of law, this Court must determine whether the plaintiff has stated a cognizable claim for a deprivation of substantive due process.

In *Rymer v. Douglas County,* 764 F.2d 796 (11th Cir.1985), the United States Court of Appeals for the Eleventh Circuit set forth in clear language the current test in this circuit as to whether there has been a violation of substantive due process in the context of a § 1983 cause of action. As stated by the Court in *Rymer:*

First, it must be determined whether there has been a deprivation of a federal constitutionally protected interest, and secondly, whether the deprivation, if any, is the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. *Williams v. Kelly,* 624 F.2d [695], 697 [ (5th Cir.1980), *cert. denied,* 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981) ].

*Id.* at 801–02. It is the opinion of this Court that, for purposes of a Rule 12(b)(6) motion to dismiss, the plaintiff has satisfied both prongs of this test.

Concerning the first prong of the *Rymer* test, the plaintiff alleges that he purchased the Third Addition property at a time when the property was not subject to zoning regulation by the defendants. Further, the plaintiff alleges that, prior to the time the said property was annexed to the City of Prattville, he and the defendants entered into a written agreement whereby the plaintiff agreed to develop the Third Addition property in accordance with the R–3 zoning classification, and the defendant agreed to allow plaintiff to connect the sanitary sewer lines in the proposed Third

Addition property to the defendants then-existing sewer lines and outfalls in the area. The plaintiff also alleges that this agreement, as well as a subsequent plat for the Third Addition property, was approved by the defendant City Council members. Based upon such factual allegations, this Court is of the opinion that the plaintiff has more than a mere expectation, need or desire that the Third Addition property be zoned in accordance with the R–3 criteria. Indeed, it would appear to this Court that the plaintiff has shown a legitimate claim of entitlement not to be deprived—without due process of law—of those benefits he would receive if the Third Addition property was zoned R–3. Thus, this Court finds that the plaintiff has a property interest which falls within the protections of the substantive due process clause of the Fourteenth Amendment.[13]

Finally, concerning the second prong of the *Rymer* test, this Court must determine whether the alleged property deprivation has been the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. Though it is beyond doubt that the substantive due process clause protects the right of an individual to be free from the abuse of governmental power, federal review of zoning decisions under the arbitrary and capricious standard is extremely narrow. "[T]he only question which federal district courts may consider [in reviewing zoning decisions] is whether the action of the zoning commission is arbitrary and capricious, having no substantial relation to the general welfare." *Nasser, supra,* 671 F.2d at 441 [citing *South Gwinnett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir.), *cert. denied,* 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974)]. Further, "where evidence demonstrating arbitrariness is adduced, 'there must be some basis in fact and law to justify the zoning action as consistent with reasonableness.'" *Id.* It is the opinion of this Court that such can hardly be done on a Rule 12(b)(6) motion to dismiss. Instead, such a determination necessarily involves questions of fact and proof. Accordingly, under such circumstances, this Court cannot find beyond a doubt that the plaintiff can prove no set of facts which would entitle him to relief. Therefore, the defendants' motion to dismiss plaintiff's substantive due process claim (Count I) for failure to state a claim upon which relief may be granted is due to be denied at this time.

A separate order will be entered in accordance with this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion filed contemporaneously herewith, it is the

ORDER, JUDGMENT, and DECREE of the Court:

1. That to the extent the defendants' motion to dismiss seeks an order of abstention from this Court said motion is DENIED;

2. That the punitive damages claim against the defendant City of Prattville be and the same is hereby DISMISSED;

3. That all monetary damage claims against the individual defendants in their official capacities be and they are hereby DISMISSED;

---

**13.** As recognized by the Court in *DiMassimo v. City of Clearwater,* 805 F.2d 1536, 1540 (11th Cir.1986), the definition of "property interests" commonly used for § 1983 purposes, is found in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth,* the United States Supreme Court held that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it... Proper-ty interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or under-standings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* As stated above, this Court is of the opinion that, for purposes of Rule 12(b)(6) motion to dismiss, the plaintiff has such a property interest herein.

4. That the Fifth Amendment claim (inverse condemnation claim contained in Count II of the complaint) be and the same is hereby DISMISSED;

5. That the defendants' motion to dismiss plaintiff's substantive due process claim (as contained in Count I of the complaint) be and the same is hereby DENIED at this time; and

6. That in all other respects, the defendants' motion to dismiss be and the same is hereby DENIED.